FILED

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2007 OCT 31  A 9:04

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

```
_____       )
                               )
L. BRENT BOZELL, III           )
                               )
                               )
         Plaintiff,            )
                               )
    v.                         )   Civil Action No. 1:07cv 1097
                               )                     CMH/BeP
                               )
COMPASS CARE, Inc.             )
 3130 W. 57th Street           )
 Suite 107                     )
 Sioux Falls, S.D. 57108       )
    and                        )
                               )
PAUL ERICKSON                  )
                               )
         Defendants            )
_____       )
```

**COMPLAINT**

Plaintiff L. Brent Bozell, III, by counsel, in support of his Complaint against defendants Compass Care, Inc., and Paul Erickson alleges as follows:

**The Parties**

1. Plaintiff L. Brent Bozell, III is a citizen and domiciliary of the Commonwealth of Virginia and a resident of this judicial district.

1

2. Defendant Compass Care, Inc. (Compass Care) is a South Dakota corporation, whose principal office is located at 3130 W. 57th Street, Suite 107, Sioux Falls, South Dakota, 57108.

3. Defendant Paul Erickson (Erickson) is a citizen and domiciliary of the State of South Dakota.

4. Defendant Erickson is sued in his own right.

### Jursidiction

5. Jurisdiction exists in this Court pursuant to 28 U.S.C. § 1332(a), in that the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

### Venue

6. Venue is proper in this Court pursuant to 28 U.S.C § 1391(a)(2), in that a substantial part of the events at issue in this action occurred in this judicial district.

### Facts

7. Plaintiff Bozell and defendant Erickson have known each other socially for a number of years and have worked together on various business and other projects during that time. Defendant Erickson had from time to time represented to plaintiff Bozell that he was an astute businessman and an accomplished investor of his own and other people's money.

8. In February 2006, plaintiff Bozell and defendant Erickson had one or more discussions at locations in this judicial district about plaintiff Bozell's seeking an investment opportunity.

9. Shortly after that conversation, defendant Erickson, as president of defendant Compass Care, wrote to plaintiff Bozell on February 15, 2006, at his Alexandria, Virginia office, offering plaintiff Bozell an opportunity to invest $200,000 investment in Compass Care.

10. In that letter, defendant Erickson repeated representations he had made to plaintiff Bozell in their previous conversations about the expected return on an investment in defendant in Compass Care. He wrote that past investors had realized returns ranging from 50% to 100% on their investments within one year of the date of their investment.

11. In addition, and in order to induce plaintiff Bozell to invest in Compass Care, defendant Erickson wrote in his February 15, 2006 letter,

> When compiling a "friends & family" list for these types of transactions, it's VERY important to me that these people remain friends and family. Toward that end, I insist upon extending a personal guarantee of whatever amount people on these lists choose to put into play. I won't guarantee your potential profit, but I can assure you that unforeseen circumstances won't rob you of the principal put into play.

3

12. In letter to plaintiff Bozell, defendant Erickson also wrote that his "unalloyed advice to you would be to put [$200,000] into Compass Care for 2006. . .," adding, "if you want to do this, my investment banks will probably want this concluded by next week."

13. Based on the representations contained in the February 15, 2006 Compass Care letter, including defendant Erickson's unconditional personal guarantee of the Compass Care obligations therein, on February 20, 2006, plaintiff Bozell sent $200,000 drawn on an account in Alexandria, Virginia, to defendant Erickson to invest in Compass Care.

14. Based on the terms of the February 15, 2006 letter, and defendant Erickson's oral representations to him, plaintiff Bozell invested in Compass Care with the understanding that:

- it would be invested in Compass Care;

- no later than one year from the date of that investment the $200,000 amount of the original investment would be repaid;

- no later than one year from the date of that investment, defendant Compass Care would pay Mr. Bozell an additional amount of between 50% and 100% of the principal investment amount; and

- defendant Erickson personally guaranteed that plaintiff Bozell would be repaid the $200,000 original amount of his investment.

15. On February 20, 2007, defendant Erickson emailed plaintiff Bozell at his Alexandria, Virginia office announcing the anniversary of his "incredibly shrewd investment" in Compass Care, and promising additional information soon.[1]

16. On February 28, 2007, Defendant Erickson again emailed plaintiff:

> As for Compass Care: The report I got last Friday is that everybody almost "doubled out." Let's talk this week. . . . Essentially, you have a $200k original investment and a $200k "profit" that can be treated as either a capital gain or a stock dividend.

17. Thereafter, plaintiff Bozell and defendant Erickson traded emails and telephone calls about the promised payments.

18. In September 2007, after plaintiff Bozell demanded immediate repayment of the $200,000 amount of the original investment, defendant Erickson, pursuant to his personal guarantee of repayment, agreed to repay that amount immediately.

19. To that end, defendant Erickson emailed plaintiff Bozell that he (Erickson) had instructed his accountants to liquidate certain mutual funds held by defendant Erickson, the proceeds of which he intended to use to repay the $200,000 amount of the original investment.

20. On September 17, 2007 defendant Erickson prepared and personally delivered to plaintiff Bozell at his Alexandria,

---

[1] All emails to plaintiff Bozell were sent *to* him at his Alexandria, Virginia office, and all emails *from* him to defendant Erickson were sent from that office.

Virginia office his (Erickson's) personal check in the amount of $200,000 as repayment of the amount of the original investment.

21. Plaintiff Bozell deposited defendant Erickson's check into his personal account in Alexandria, Virginia, but the check was dishonored and returned for insufficient funds in defendant Erickson's account on which his check was drawn.

22. On or about October 23, 2007, defendant Compass Care wired $10,000 to plaintiff Bozell.

23. Plaintiff Bozell has not received any other payments from either defendant and as of the date of filing of this action plaintiff Bozell is owed $190,000 on his original $200,000 investment, and a return of that investment of between 50% and 100%.

**COUNT ONE**
**Breach of Contract**
**(against Compass Care)**

24. The foregoing allegations are incorporated as if realleged herein.

25. Pursuant to the terms of the February 15, 2006 letter to plaintiff Bozell from defendant Erickson, as its president, defendant Compass Care was contractually obligated to repay plaintiff Bozell the entire $200,000 amount of the original investment, plus an additional amount of between 50% to 100% of that amount as a return on the original investment by the end of February 2007.

26. By failing to make that payment, defendant Compass Care breached the agreement contained in the February 15, 2006 letter to plaintiff Bozell.

27. That breach by defendant Compass Care was without legal justification or excuse.

28. As a result of the foregoing breach by defendant Compass Care, plaintiff Bozell has suffered and continues to suffer damages in the amount of $190,000, plus loss of income on that amount (interest); and another $100,000, representing the promised return on the original investment.

Wherefore, plaintiff Bozell asks for judgment in his favor and against defendant Compass Care in the amount of $290,000, plus interest thereon at the legal rate from March 1, 2007.

## COUNT TWO
### Breach of Contract
### (against Paul Erickson)

29. The foregoing allegations are incorporated as if realleged herein.

30. Pursuant to his personal guarantee of the obligation set out in the February 15, 2006 letter to repay plaintiff Bozell the $200,000 amount of the original investment, defendant Erickson was obligated to repay plaintiff Bozell the entire $200,000 amount of the original investment when Compass Care failed to do so, plus an additional amount of between 50% to

7

100% of that amount as a return on the original investment, all by the end of February 2007.

31. By failing to make good on his personal guarantee of payment of defendant Compass Care's obligation to plaintiff Bozell, defendant Erickson breached the guarantee promise contained in the February 15, 2006 letter to plaintiff Bozell.

32. That breach by defendant Erickson was without legal justification or excuse.

33. As a result of the foregoing breach by defendant Erickson, plaintiff Bozell has suffered and continues to suffer damages in the amount of $190,000, plus loss of income on that amount (interest); and another $100,000, representing the promised return on the original investment.

Wherefore, plaintiff Bozell asks for judgment in his favor and against defendant Erickson in the amount of $290,000, plus interest thereon at the legal rate from March 1, 2007.

### COUNT THREE
### Va. Code § 8.01-27.1
### (against Paul Erickson)

34. The foregoing allegations are incorporated as if realleged herein.

35. Payment of the check drawn by defendant Erickson and delivered to plaintiff Bozell, as alleged in paragraph 21, above, was refused by the defendant's drawee depository because of lack of funds in that account.

36. The allegation in the preceding paragraph constitutes a violation of Va. Code § 8.01-27.1.

37. As a result of the refusal by defendant Erickson's depository to pay his September 17, 2007 made payable to plaintiff Bozell, plaintiff Bozell's bank charged him a bad check return fee in the amount of $35.00.

Wherefore, plaintiff Bozell asks for judgment in his favor in the amounts of: $200,000, representing the amount of the dishonored September 17, 2007 check; legal interest on the amount of that check from the date of the check; $35.00, representing the returned check fee charged to plaintiff Bozell's account by his bank; a processing charge of $35.00; and a reasonable attorney's fee, all as authorized by Va. Code § 8.01-27.1.

                              L. BRENT BOZELL, III
                                   By Counsel

Robert R. Sparks, Jr.
VSB#12879
Counsel for L. Brent Bozell, III
Sparks & Craig, LLP
6862 Elm Street, Suite 360
McLean, Virginia 22101
Phone: (703) 848-4700
FAX: (703) 893-7371
rrsparks@sparkscraig.com